IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMBER GASIEWSKI, | ) | CASE NO.  4:22-CV002194 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Plaintiff, Amber Gasiewski ("Gasiewski"), challenges the final decision of Defendant
Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance
Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social
Security Act ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the
undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b)
for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends
that the Commissioner's final decision be **AFFIRMED**.

## I.   PROCEDURAL HISTORY

Gasiewski filed an application for DIB on November 2, 2020, and protectively filed for SSI
on May 28, 2021. (Transcript ("Tr.") at 16, 193-95.) She alleged a disability onset date of September
4, 2020, and claimed disability due to multiple sclerosis ("MS"); and depressive, bipolar, and related
disorders. (Tr. 69, 77, 207) Her applications were denied initially and upon reconsideration, and
Gasiewski requested a hearing before an administrative law judge ("ALJ").  (Tr. 16, 69-96, 115)

1

In November 2021, ALJ ("ALJ") Michael Schmitz held a telephonic hearing on Gasiewski's applications. (Tr. 31-68) Gasiewski, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On December 14, 2021, the ALJ issued a written decision finding Gasiewski was not disabled. (Tr. 13-26) The ALJ's decision became final on October 6, 2022, when the Appeals Council declined further review. (Tr. 1-3).

Gasiewski then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1)  The parties have completed briefing in this case. (Doc. Nos. 8, 10, 11) In her brief, Gasiewski asserts the following assignment of error:

1.  The ALJ's RFC determination at Step 5 was not supported by substantial evidence because it failed to accurately portray Ms. Gasiewski and was not in compliance with the requirements of SSR 96-8p in that the ALJ failed to explain the basis for his determination and failed to resolve the conflicts in the evidence.

2.  The ALJ failed to properly evaluate Ms. Gasiewski's symptoms caused by her RRMS according to the mandates of SSR 16-3p.

(Doc. No. 8 at 2).

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Gasiewski was born in 1990 and was 30 years-old on September 4, 2020 (her alleged disability onset date), making her an "younger individual age 18-49" under the regulations. (Tr. 70) *See* 20 C.F.R. § 404.2563 and 416.963. She has at least a high school education.

### B.  Relevant Medical Evidence

#### 1.  Mental Health Impairments

Gasiewski received mental health services from Kayla M. Morgan, LISW, beginning on November 20, 2020. In her initial assessment, Gasiewski reported feeling depressed and overwhelmed, but stated she was able to care for her children and stay in a daily routine. (Tr. 494, 592-93)  Gasiewski continued to treat with LISW Morgan through February 2021 and frequently

reported anxiety. (Tr. 517, 522, 524-25, 555-57, 559-67, 580-89) LISW Morgan repeatedly listed anxiety as Gasiewski's diagnosis. (*Id.*) Gasiewski often presented with anxious mood or affect, but her mental status exams otherwise yielded normal results. (*Id.*) Gasiewski also attended a therapy session with Restore Compassionate Behavioral Health in March 2021, and was diagnosed with Post-Traumatic Stress Disorder. (Tr. 661-771) At that time, she reported that her mental health impairments did not limit her activities of daily living. (Tr. 663)

In May 2021, Gasiewski underwent a one-time consultative examination by psychologist Melissa Lanza, Ph.D. (Tr. 672-77). Gasiewski reported she applied for disability due to her MS. (Tr. 673) She stated that she initiated mental health counseling due to her separation from her husband. (Tr. 674) She stated that she had prior diagnoses of "mild" depression and PTSD. (*Id.*) She also reported that she had never been admitted to a hospital for psychiatric treatment and had never been prescribed psychotropic medications. (*Id.*)

### 2. Physical Health Impairments

In early October 2020, Gasiewski was hospitalized and diagnosed with Relapsing Remitting Multiple Sclerosis ("RRMS"). (Tr. 284, 295) It was reported that, for several months prior to hospitalization, Gasiewski had experienced right-sided numbness and tingling, along with weakness in her right lower extremity. (Tr. 279) During a follow-up appointment at the end of the month with Taylor Murphy PA-C, Gasiewski reported she was about 80% back to baseline but still had numbness and tingling in her right side and weakness in her right leg. (*Id.*) At that time, she was still using a cane for ambulation. (*Id.*) The neurological examination was within normal limits. (*Id.*) An MRI revealed multiple spinal cord lesions, one of which was concerning a demyelinating disease (Tr. 284). It was recommended Gasiewski start receiving intravenous therapy (Ocrevus) for treatment of RRMS and take a multivitamin. (*Id.*)

3

Gasiewski returned to PA-C Murphy in January 2021, and reported significant improvement in her right-sided weakness. (Tr. 501) Gasiewski also noted that she no longer used a cane. (*Id.*) She reported intermittent episodes of tremors and palpitations. (Tr. 502) After she noted Gasiewski's history of anxiety and recent family stressors, PA-C Murphy opined that Gasiewski could benefit from counseling. (*Id.*) Gasiewski reported no vertigo, lightheadedness, or falling. (*Id.*) She complained of leg numbness from T4 down her right leg. (*Id.*) A physical examination was normal, aside from minimal right sided weakness, minimal right hemiparetic gait, and decreased sensation in her right leg. (Tr. 502-03) It was recommended Gasiewski continue with her current treatment and follow up for counseling. (Tr. 504) In March 2021, Gasiewski reported no longer using a cane and that her physical impairments did not limit her activities of daily living. (Tr. 663)

At a May 2021 follow-up with PA-C Murphy, Gasiewski expressed that her tremors were "well controlled" with her prescribed medication (Inderal). (Tr. 686)  A physical examination yielded full strength and normal results aside from a "mildly decreased" pinprick sensation in her right leg. (Tr. 688) It was noted that Gasiewski had increased anxiety, palpitations, and tremulousness. (Tr. 687) It was also noted that she reported significant increased stress and poor sleep due to her divorce. (*Id.*) It was also reported in May 2021, that Gasiewski no longer used assistive devices for ambulation and that her lower extremity numbness was "overall much improved" since her initial RRMS diagnosis. (Tr. 683)

On November 15, 2021, PA-C Murphy completed a medical source opinion for Gasiewski which included a treatment summary from a visit on the same day. (Tr. 693-705) In the treatment notes, PA-C Murphy reported that Gasiewski had received two Ocrevus infusions in October 2020 which were well tolerated and that she had no new neurologic symptoms. (Tr. 701) It was also noted that Gasiewski still endorsed mild numbness in her lower right extremity, but continued to

4

see improvement and that her February 2021 scans were stable with no new lesions and no evidence of active demyelination. (Tr. 701, 704) Gasiewski expressed that her tremors were moderately controlled with medication (Inderal) and worse with cold weather. (Tr. 701) Consequently, PA-C Murphy recommended increasing her dosage of Inderal. (Tr. 704) Gasiewski reported that she had no vertigo, lightheadedness, falls, or tripping. (*Id.*) A physical exam yielded normal results other than decreased sensation in her right leg. (Tr. 703)

### C.    Opinion Evidence

**Melissa Lanza, Ph.D.** On May 22, 2021, Gasiewski attended a one-time mental health consultative examination with Dr. Lanza. (Tr. 672-77) Dr. Lanza opined that Gasiewski had some limitations in handling workplace pressures and maintaining attention and concentration due to PTSD symptoms; but had no limitation in her abilities to understand, remember, and carry out instructions or her ability to get along with others in a work setting. (Tr. 677)

**Taylor Murphy PA-C.** On November 15, 2021, PA-C Murphy completed a "Physical Residual Functional Capacity Assessment" on Gasiewski's behalf. (Tr. 693-705)  PA-C Murphy opined that Gasiewski could occasionally lift up to 10 pounds; sit up to 6 hours and walk or stand up to 2 hours in an 8-hour workday; could frequently climb, balance, stoop, kneel, crouch, and crawl – but stated these maneuvers would be "very difficult" for Gasiewski. (Tr. 694) PA-C Murphy further opened  that Gasiewski's ability to reach, handle, finger, and feel were "limited." (Tr. 696)

**State Agency Opinions:**  In November 2020, state agency consultant W. Scott Bolz, M.D. reviewed Gasiewski's file and concluded it contained insufficient evidence to make a determination regarding her physical impairments. (Tr. 70-72) On reconsideration in June 2021, Lynne Torello, M.D., reviewed the updated file and determined that Gasiewski had the physical residual functional capacity to sit for 6 out of 8 hours due to right leg weakness and dizziness. (Tr. 92-94) Dr. Torello

also opined that Gasiewski had no manipulative limitations. (Tr. 94) Regarding her mental health impairments, state agency psychologist Cynthia Waggoner, Psy.D. found insufficient evidence to make a mental health determination at the initial level. (Tr. 73) On reconsideration, Lisa Foulk, Psy.D., opined that Gasiewski had no severe mental impairments. (Tr. 89-90)

### D.  Hearing Testimony

On November 22, 2021, Gasiewski, represented by counsel, appeared for a telephonic hearing before the ALJ. (Tr. 35-68) Gasiewski testified to the following:

- She lives with her brother, his wife, and her two children (ages 10 and 6). She stated she can attend to most of her children's needs, but that her brother and his wife help from time to time. She stated they help when she needs a rest or has a headache, which occurs about 4-5 times per week. She testified that she can drive about 35-40 minutes at a time, and walk for up to 30 minutes. She stated she can perform household chores like laundry or dishes, but needs to sit after 20 minutes because she gets "pins and needles" feeling in her leg.

- She last worked for Nature Stone in fall 2020 and performed part-time work due to her children's school schedules. She was employed at Nature Stone from 2018-2020 and worked her way up from mixer to a crew leader. In the latter position, she drove a truck, trained other workers, and handled money. Prior to that position, she worked in fast food and as a dental assistant.

- She stated she is unable work due to MS symptoms such as numbness, tingling, pin prick sensations, inability to stand or sit for long, restlessness, feeling sick and dizzy in heat, vertigo, headaches, fatigue, and insomnia. She stated she experiences MS flareups but with no true pattern as to flareup frequency. She stated her last flare up was October of 2020 and lasted until mid-March. She stated for headaches she must rest in a dark room. She also testified that she has pain in her left and right sides, but primarily right side that goes all the way from her toes to her fingers.

- She receives transfusion for MS every six months. She stated she also takes propranolol for anxiety and tremors. She stated her treatment helps "somewhat."

- The ALJ asked Gasiewski if she fell often due to vertigo and balance issues. Gasiewski stated she comes close to falling and noted that she used a cane or walker in the past, but no longer used a cane unless she had to walk long distances.

- The ALJ then asked about behavioral issues. Gasiewski testified that she experiences crying spells due to depression a few times a week and also had anxiety and panic attacks. She stated she previously would experience about 5 panic attacks a year, but

6

stated she had 12 in the last 10 months, which she attributed to her divorce proceedings. She stated she experiences PTSD nightmares 1-2 a month. She also stated she has memory loss and needs to set many alarms and calendar notifications.

- During an examination from her counsel, Gasiewski further testified that her MS exacerbations started seven years ago, after the birth of her first child, and that her relapses or exacerbations increased from 2 days to 2 weeks to 2 months in length over the last 7 years. She also stated that her daily vertigo was probably her number one symptom and that she had to be exceedingly careful on stairs. She further testified that extremes in weather caused an exacerbation of MS symptoms. She also expressed difficulty with typing and writing due to tremors.

(Tr. 41-60)

Vocational Expert ("VE") Lynne Smith also testified at the hearing. (Tr. 60-66) The ALJ posed various hypothetical scenarios to the VE about whether an individual of Gasiewski's age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Light work, except she could never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently reach, handles and finger with bilateral upper extremities; needs to avoid concentrated exposure to extreme cold, extreme heat, and bright lights; avoid all exposure to hazards such as unprotected heights, moving mechanical parts, and operation of motor vehicles; can perform simple and complex tasks which require a high-production rate paces such as assembly line work; and respond appropriately to only occasional change in a routine work setting. (Tr. 62-63)
   - The VE stated that the hypothetical person could not perform Gasiewski's past work, but could perform work as an officer helper, sales clerk, and deli clerk. (Tr. 63).

2. The ALJ then adjusted hypothetical #1 so that the person would perform work at the sedentary level of exertion. (*Id.*)
   - The VE testified that the individual in hypothetical #2 could perform work as an order clerk, document preparer, and charge account clerk. (Tr. 63-64)

3. The ALJ then asked what would happen to the first two hypotheticals if (a) reaching were reduced from frequently to occasional or (b) if reaching was changed to occasional handling and fingering with the bilateral upper extremities. (Tr. 64)
   - The VE responded that in both scenarios all jobs would be eliminated. (Tr. 64)

4. The ALJ then asked the VE whether the occasional use of a cane for ambulating would impact the VE's answer for hypotheticals #1 and #2. (Tr. 64)

7

- The VE stated that the light jobs would be eliminated, but that the sedentary jobs listed would remain. (Tr. 64-65)

The VE also testified that an employer would tolerate an individual off-task 10% of time and absenteeism once per month. (Tr. 65)

### III.  STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.   20 C.F.R. §§ 404.1520(c) *and* 416.920(c).   A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2.    The claimant has not engaged in substantial gainful activity since September 4, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: multiple sclerosis, enhanced physiologic tremor, headaches, reactive depression, anxiety disorder, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never crawl; frequently reach, handle, and finger with the bilateral upper extremity; avoid concentrated exposure extreme cold, extreme heat, and bright lights (brighter than a typical office setting), and avoid all exposure to hazards such as unprotected heights, moving, mechanical parts, and operation of motor vehicles; and can perform a wide variety of both simple and complex tasks, but cannot perform tasks which require a high production rate pace such as assembly line work, and can respond appropriately to occasional changes in a routine work setting.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on June 26, 1990 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a high school education (20 CRF 404.1564 and CFR 416.964).

9.    Transferability of job skills is not an issue because the claimant does not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 4, 2020, through the date of this decision (20 CFR 404.1520(g) 416.920(g)).

(Tr. 18-26)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec*., 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).   Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.   *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994)).   In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388,

389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

Gasiewski puts forth two assignments of error in her brief. First, she argues that the ALJ's Step 5 determination lacked substantial evidence and violated SSR 96-8p, "in that the ALJ failed to explain the basis for his determination and failed to resolve the conflicts in the evidence." (Doc. No. 8 at 2). Second, she argues that the ALJ failed to properly evaluate her MS symptoms in accordance with SSR 16-3p. (*Id.*)

### A.  Step Five – SSR 96-8p

Gasiewski first argues that the ALJ erred in determining her residual functional capacity ("RFC") in violation of Social Security Ruling ("SSR") 96-8p. She argues that the ALJ's finding that she could perform a reduced range of light work that included the ability to "frequently reach, handle, and finger with the bilateral upper extremity" was not supported by the evidence. (Doc. No. 8 at 15-18) She also contends that the ALJ failed to resolve a conflict between the medical opinions. (Doc. No. 8 at 15-18) Gasiewski argues that, but for the ALJ's error, she would have been found disabled because the VE testified that there would be no jobs available if the use of upper extremities was limited to occasional instead of frequent. (*Id.* at 15) Gasiewski further argues that her reported hand tremors supported a finding that she could not frequently use her upper extremities. (*Id.*) The Commissioner counters that the ALJ's manipulative limitation determination was supported by substantial evidence including the consultative exam with PA-C Murphy, Gasiewski's conservative treatment, and the opinion of Dr. Torello. (Doc. No. 10 at 7-9)

#### 1.  Legal Standard

SSR 96-8p provides guidance to ALJs on how to assess a claimant's RFC. It provides that a social security disability claimant's RFC is an assessment of the most a claimant can still do despite her limitations. SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)(1).

12

Though an ALJ must consider all medical and non-medical evidence, "[t]he ALJ is charged with the responsibility of determining the RFC." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 719, 728 (6th Cir. 2013). When addressing medical source opinions, SSR 96-8p provides that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P at *7.

### 2. Analysis

The ALJ found Gasiewski retained the RFC to "frequently reach, handle, and finger with the bilateral upper extremity." (Tr. 20) Gasiewski argues that the opinion of PA-C Murphy conflicted with the ALJ's determination and the ALJ violated 96-8p by not sufficiently explaining why the opinion was not adopted. Gasiewski's assignment of error is without merit because Gasiewki fails to show that PA-C Murphy's opinion conflicted with the RFC. Assuming *arguendo,* that there was a conflict, the ALJ provided a sufficient explanation why PA-C Murphy's opinion was not adopted.

PA-C Murphy opined that Gasiewski was "limited" in her abilities for reaching, handling, and fingering. (Tr. 696) The ALJ found the opinion of PA-C Murphy "unpersuasive." (Tr. 24) The ALJ explained that the opinion was inconsistent and unsupported:

> The opinions as a whole are inconsistent with the medical record, including the claimant's generally unremarkable diagnostic and clinical findings, her mostly conservative treatment history, and her positive response to medications and treatment for multiple sclerosis and her other physical health impairments (Exhibit 2F, pg. 43; 10F, pg. 8). Moreover, Ms. Taylor provided little explanation or supporting evidence for these limitations aside from largely listing the claimant's diagnoses and subjective allegations of pain, which are not fully consistent with the record for the reasons listed above.

(Tr. 24)

Although Gasiewski asserts that the ALJ failed to resolve the conflict between PA-C Murphy's opinion and the RFC, Gasiewski has not demonstrated that there is a conflict because

13

PA-C Murphy's use of "limited" is vague and unexplained. As the Commissioner highlights, limited is not defined by the Social Security Administration ("SSA"). (Doc. No. 10 at 8-9) Gasiewski argues that "limited" should be considered equivalent to "occasional," the latter the SSA defines as occurring "very little up to one-third of the time." SSR 83-10p. However, Gasiewski fails to cite to any authority in support her argument that "limited" would equate to "occasional" use. The dictionary definition of "limited" is "restricted,"[1] which does not imply any detail on the level or severity of a restriction. SSA regulations also do not suggest that limited would be equivalent to "occasional."  In SSR 83-10p, the regulation Gasiewski cites to define "occasional," the SSA uses the word "limited" several times. The usage of the word "limited" in SSR 83-10p does not suggest that it the SSA defines the term as Gasiewski contends. For example, SSR 83-10p states that tables are "limited to the sedentary, light, and medium levels of work." Thus, "limited" can describe three different exertional levels. SSR 83-10p later states that "limited to" means "does not exceed." Again, the use of "limited" in SSR 83-10p does not suggest that the SSA would define "limited" the same as "occasional." Gasiewski does not cite any authority in support of her argument that "limited" is equivalent to "occasional." Thus, the Court should reject her argument that PA-C Murphy's opinion contradicts with the RFC's use of "frequent." Moreover, the SSA's use of "limited" in SSR 83-10p, as well as the standard definition of the word, cut against Gasiewski's argument. Accordingly, Gasiewski's contention that the ALJ erred by not resolving a conflict between "frequent" and "limited" is without merit because she has not shown that these terms are in conflict.[2]

---

[1] https://www.merriam-webster.com/dictionary/limited (last accessed August 10, 2023).

[2] There is also caselaw that supports a rejection of Gasiewski's argument. *See e.g., Acosta v. Comm'r of Soc. Sec.,* No. 17-12414, 2018 WL 7254256, at *10 (E.D. Mich. Sept. 6, 2018), report and recommendation adopted, No. 17-12414, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019) (finding medical opinion using terms like "severely limited" was so vague it did not "reasonably inform plaintiff's functional abilities."); *Braoudakis v. Comm'r of Soc. Sec.*, 2011 WL 797002, at *6 (S.D. Ohio Feb. 7, 2011) (finding that the "opinion that plaintiff is 'quite limited' is indeed vague," and

Assuming *arguendo* that the Court can construe "limited" to mean "occasional" as it is defined by the SSA, Gasiewski's argument still fails because the ALJ met his burden under SSR 96-8p by explaining why PA-C Murphy's opinion was not adopted. The ALJ explained that the opinion was inconsistent and unsupported. And the ALJ's determination is supported by substantial evidence.

With regard to support, the ALJ stated that PA-C Murphy's opinion lacked support because it, "provided little explanation or supporting evidence for these limitations aside from largely listing the claimant's diagnoses and subjective allegations of pain, which are not fully consistent with the record for the reasons listed above." (Tr. 24) Gasiewski has not challenged this determination and it is supported by the record. As discussed above, PA-C Murphy does not provide an explanation for her use of the term "limited." In support of the opined manipulative limitations, PA-C Murphy listed Gasiewski's RRMS diagnosis and stated, "decreased sensation and fine motor control 2/2." (Tr. 696) Moreover, neither the examination completed the same day nor any other examinations conducted by PA-C Murphy found manipulative deficits in Gasiewski's upper extremities. "The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions." *Jacob v. Comm'r of Soc. Sec.,* No. 1:15-CV-0268, 2016 WL 1469792, at *6 (W.D. Mich. Apr. 15, 2016) (*citing Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 549–50 (6th Cir. 2014); *Todd v. Comm'r of Soc. Sec.,* No. 114CV01141STATMP, 2017 WL 3835702, at *3 (W.D. Tenn. Sept. 1, 2017) (found ALJ properly discounted doctor's

---

could be disregarded by the ALJ.); *Tempesta v. Astrue*, 2009 WL 211362, *7 (E.D.N.Y. Jan.28, 2009) (characterizing as "vague", medical opinion that claimant had "limited ability to perform frequent bending, to lift, to carry, to push and to pull heavy loads.")

opined hand limitations where the treatment notes had no indication that doctor recommend claimant limit her activities due to her hands).

Since PA-C Murphy's objective findings did not support the opined manipulative limitations, the ALJ determined that the manipulative and other limitations were based on Gasiewski's subjective complaints, which the ALJ concluded were "less than fully consistent with the evidence…[and] not supported by medical and non-medical sources." (Tr. 22, 24) The Sixth Circuit has found that an ALJ properly discounts a medical opinion where it is based on subjective complaints. *Remias v. Comm'r of Soc. Sec.,* 690 F. App'x 356, 357 (6th Cir. 2017) (Finding the ALJ "reasonably discounted" a medical opinion based, in part, on the finding that the "proposed functional limitations were based largely on [claimant's] subjective complaints."); *Keeler v. Comm'r of Soc. Sec*., 511 Fed.Appx. 472, 473 (6th Cir.2013) (finding substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because it among other reasons, it appeared to be based primarily on the claimant's subjective complaints.); *see also Harrier v. Berryhill*, No. 1:17-CV-01163-JAY, 2019 WL 12758078, at *5 (W.D. Tenn. Mar. 21, 2019) ("A lack of supporting objective evidence is a significant factor that the ALJ may consider when evaluating any medical opinion."); *McLearren v. Astrue*, No. 2:06-0071, 2009 WL 703294, at *10 (M.D. Tenn. Mar. 16, 2009) (found substantial evidence to support discounting opinion, including "lack of objective medical evidence in [provider's] treatment notes to support his conclusion.") Accordingly, substantial evidence supports the ALJ's determination that PA-C Murphy's opinion lacked support and was based on subjective complaints the ALJ found unconvincing.

In addition to lack of support, the ALJ also discounted PA-C Murphy's opinion as inconsistent. The ALJ explained PA-C Murphy's opinion was inconsistent with the medical

record, "including the claimant's generally unremarkable diagnostic and clinical findings, her mostly conservative treatment history, and [a] positive response to medications and treatment for her multiple sclerosis and her other physical health impairments." (Tr. 24) As a supportive example, the ALJ pointed to a May 2021 visit with PA-C Murphy. The visit notes state that Gasiewski's tremors were "well controlled" with medication and a physical examination yielded full strength and normal results for Gasiewski's upper extremities. (Tr. 22, 24, 686-88)  The ALJ also pointed to a May 2021 MRI of the brain that, "brain showed no changes from the prior study, and…no evidence for restricted diffusion to suggest active demyelination." (Tr. 22) Thus, substantial evidence supports the ALJ's determination that PA-C Murphy's opinion was inconsistent with the medical evidence.

Dr. Torello's opinion also provides additional evidence to support the ALJ's inconsistency finding. Dr. Torello opined that Gasiewski had no manipulative limitations and the ALJ found the opinion "persuasive." (Tr. 24). Gasiewski argues that Dr. Torello's opinion cannot constitute substantial evidence because the ALJ provided for some manipulative limitations, while Dr. Torello found none. However, Gasiewski's position is untenable. *Suffecool v. Astrue*, No. 5:09 CV 2846, 2010 WL 3238993, at *5 (N.D. Ohio Aug. 16, 2010) (finding substantial evidence supported ALJ decision to not include occasional reaching, handling, and fingering limitations, including state agency physician's opinion that claimant did not have any manipulative restrictions). Though the ALJ did not adopt Dr. Torello's medical opinion wholesale, the ALJ is not required to do so. *Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x 435, 442–43 (6th Cir. 2017) ("To require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.") Instead, the ALJ considered all relevant medical and non-medical evidence as

17

required by SSR 96-8p and credited Gasiewski's complaints to a degree in providing for "frequent" manipulation. The ALJ did not commit reversible error by granting Gasiewski a more favorable RFC than the state agency physician. *Putman v. Comm'r of Soc. Sec.,* No. 2:20-cv-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) (finding no error where the ALJ "imposed greater restrictions than opined by the state agency physicians.); *Weirauch v. Comm'r of Soc. Sec.,* No. 20-11511, 2021 WL 4497865, at *17 (E.D. Mich. Mar. 23, 2021) ("if anything, the ALJ's opinion was more favorable to the Plaintiff than necessary. Under these circumstances, Plaintiff has no grounds for complaint."); *Mosed v. Comm'r of Soc. Sec.*, 2016 WL 6211288, at *7 (E.D. Mich. 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing."); *Kaplun v. Comm'r of Soc. Sec.,* No. 2:14-CV-0439, 2015 WL 736475, at *6 (S.D. Ohio Feb. 20, 2015) ("[A]ny error in not adopting the state agency reviewers' opinions in their entirety – as opposed to the ALJ's approach of according them significant weight but giving Plaintiff the benefit of the doubt based on is testimony – would be harmless, since that approach is also more favorable to the Plaintiff."); *see also Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 916 (M.D. Tenn. 2017) (finding no error where "the ALJ ascribed an RFC that was more favorable to Plaintiff than any evidence suggested.") Here, the ALJ did not commit reversible error by providing manipulative limitations that were more favorable to Gasiewski, than those opined by Dr. Torello. Dr. Torello's opinion adds to the substantial evidence the ALJ's relied on to discount PA-C Murphy's opinion.

As the ALJ found PA-C Murphy's opinion unpersuasive because it lacked support and conflicted with other evidence in the record, the ALJ was not required to include PA-C Murphy's opined manipulative limitations in the RFC. *Hahn v. Comm'r of Soc. Sec. Admin.,* No. 4:16CV3062, 2017 WL 5759362, at *14 (N.D. Ohio Nov. 28, 2017) (rejecting challenge to ALJ's

RFC limiting claimant to frequent handling and reaching because the ALJ properly discounted medical assessment opining greater manipulative restriction and because examinations failed to find any manipulative limitations); *Reeves v. Colvin*, No. 3:13CV1425, 2014 WL 4675321, at *21 (N.D. Ohio Sept. 18, 2014), *aff'd sub nom. Reeves v. Comm'r of Soc. Sec.,* 618 F. App'x 267 (6th Cir. 2015) (finding ALJ did not need to include opined limitations related to claimant's hand tremor where ALJ gave little weight to the medical opinion); *see also Miller v. Comm'r Soc. Sec. Admin.*, No. 3:12 CV 3064, 2014 WL 916945, at *12 (N.D. Ohio Mar. 10, 2014) (finding limitation to "frequent fingering" supported by substantial evidence where claimant conceded hand tremor did not occur daily."); *see also Sothen v. Comm'r of Soc. Sec*., No. 1:13 CV 2426, 2014 WL 5823462, at *1, 4 (N.D. Ohio Nov. 10, 2014) (finding ALJ's RFC limitation to frequent handing and fingering supported by substantial evidence because treatment notes indicated only mild tremors and symptom improvement); *Gray v. Astrue*, No. CIV.A.08-317-DLB, 2009 WL 1811536, at *5 (E.D. Ky. June 25, 2009) (citing *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 548 (6th Cir.2002) ("Given that there is substantial evidence to uphold the ALJ's rejection of some of Dr. Fogleman's proposed limitations…those limitations did not need to be included in the hypothetical.)

Further, other than her own subjective complaints and PA-C Murphy's opinion (both of which the ALJ discounted), Gasiewski fails to point to any additional evidence that the ALJ failed to consider. (Doc. No, 8 at 15-18); *Geddes v. Comm'r of Soc. Sec., No.* 1:17-CV-777, 2019 WL 336876, at *10 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted*, No. 1:17CV777, 2019 WL 591493 (S.D. Ohio Feb. 13, 2019) (finding ALJ did not err in finding claimant could frequently finger and handle because claimant failed to point to additional evidence ALJ did not take into account when formulating the RFC); *James v. Berryhill*, No. 2:15-0052, 2018 WL

1035825, at *9 (M.D. Tenn. Feb. 23, 2018) (finding "ALJ's failure to adopt any specific manipulative restriction in her RFC finding is substantially supported by the fact that [claimant's] hand tremor is barely mentioned in the medical evidence" and claimant could perform activities like driving and household chores).

In summation, Gasiewski's argument that PA-C Murphy's use of "limited" conflict with the ALJ's decision is unsupported by any authority. Assuming *arguendo* that there is a conflict, the ALJ met his duty under SSR 96-8p by explaining why he did not adopt PA-C Murphy's opinion. The explanation is supported by substantial evidence. Accordingly, Gasiewski's first assignment of error fails.

**B.  SSR 16-3p**

In her second assignment of error, Gasiewski argues that the ALJ committed reversible error in assessing her subjective complaints. (Doc. No. 8 at 18-23)

**1.  Law**

Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475–76 (6th Cir.2003). Social Security Ruling 16-3p ("SSR 16-3p") provides that in evaluating the intensity and persistence of symptoms the ALJ should consider evidence including (1) objective medical evidence; (2) the claimant's statements; and (3) medical sources (e.g. diagnoses, opinions, treatment). In addition, the ALJ should also review the following factors:[3]

1.  Daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

---

[3] An "ALJ need not analyze all seven factors" in his credibility determination. *Hatcher v. Berryhill,* Case No. 1:18-cv-1123, 2019 WL 1382288 at *15 (N.D. Ohio March 27, 2019). The ALJ needs only to address "factors pertinent to evidence of record." SSR 13-6p.

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* A claimant's statements about the intensity, persistence, and effects of her pain or other symptoms should not be rejected "solely because the available objective medical evidence does not substantiate your statements," however, the objective medical evidence is "one of the many factors [the ALJ] must consider.*" Id.*

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 476 (6th Cir.2003) (citations omitted). Nevertheless, an ALJ's assessment of a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d 469 at 476.

## 2.  Analysis

Gasiewski argues that remand is required because the ALJ did not evaluate her symptoms "according to the mandates of SSR 16-3p." (Doc. No. 8 at 20) More specifically, Gasiewski argues that the ALJ ignored contrary evidence including her complaints of fatigue, insomnia, vertigo, balance problems, and depression. (*Id.*)

Gasiewski's argument that the ALJ "selectively analyzed" the evidence is not supported by the record. (Doc. No. 8 at 22; Doc. No. 11 at 9-10) The ALJ addressed all symptoms Gasiewski notes in her brief. For example, the ALJ addressed Gasiewski's claims that she experiences crying spells, panic attacks, nightmares, headaches, dizziness, vertigo, insomnia, and fatigue.[4] (Tr. 21) However, the ALJ found Gasiewski's allegations regarding the nature and degree of her pain and functional limitations "less than fully consistent with the evidence" including the "medical and non-medical sources." The ALJ further explained:

> Diagnostic test results and physical examination findings have been largely unremarkable, the claimant had a mostly conservative treatment history since the alleged onset date, and she saw significant improvement in her multiple sclerosis symptoms/ability to ambulate recently. For example, a physical examination performed in May of 2021 revealed that the claimant was alert and oriented to all spheres, strength was five out of five throughout, pinprick sensation was mildly decreased in her right lower extremity, her gait was normal, and facial muscle function was in the lower normal range (Exhibit 10F, pg. 10).
>
> Regarding the consistency of the claimant's mental health allegations, she had a very limited treatment history since the alleged onset date, including telling Dr. Lanza that she never took psychotropic medications, and there is no evidence of psychiatric hospitalization in the record. Such absence of documentation of ongoing treatment is inconsistent, and it seriously undermines allegations of disabling, or even severe, limitations of function, lasting twelve months in duration, and despite treatment (20 CFR 404.1520(a)(4)(ii) and 404.1509). Additionally, the claimant reported mostly mild to moderate level symptoms to providers at Restore Compassionate Behavioral Health and

---

[4] Though Gasiewski takes issue with the level of detail in which the ALJ addressed Gasiewski's secondary symptoms, there is no indication that the ALJ ignored or "unduly concentrate[d] on one single aspect" of her history as she suggests. (Doc. No. 11 at 9) And Gasiewski fails to point to any authority requiring the ALJ to address her secondary symptoms in the level of detail she now demands. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 533 (6th Cir. 2014) ("Even if this Court were to find that evidence could support an alternative conclusion, the panel must affirm if the credibility determination is supported by substantial evidence.").

during her psychological consultative examination with Dr. Lanza, without evidence of
hallucinations, delusions, obsessions, compulsions, cognitive disorder, current
suicidal/homicidal ideation, or other serious issues (Exhibit 8F; 9F). Thus, there are no
indications in the medical record of limitations beyond the performance of light level work
with the non-exertional restrictions listed above.

(Tr. 22-23) Gasiewski has not challenged the above finding. Thus, the ALJ's opinion is supported

by substantial evidence and in accordance with SSR 16-3p's guidelines. Consistent with SSR 16-

3p the ALJ found Gasiewski's statement concerning the intensity, persistence, and limiting effects

of her symptoms conflicted with objective medical evidence, the conservative nature and

effectiveness of her treatment regime, and her daily activities.

The record supports the ALJ's determination that objective medical evidence, such as

diagnostic test results and physical examination findings, have been largely unremarkable. (Tr.

22) A February 2021 MRI of her brain showed "no evidence for restricted diffusion to suggest

active demyelination" and the spinal MRI showed stability with "no new lesions noted." (Tr. 22,

602 688) Examinations have also yielded normal results. The ALJ pointed out that Gasiewski saw

"significant improvement" in her RRMS symptoms, noting that a May 2021 exam found 5/5

strength, normal gait and facial muscle function. (Tr. 23, 688) As Gasiewski's own brief

demonstrates, aside from some decreased sensation in her right leg and one visit in January 2021

where "minimal" right sided weakness and "minimal" right hemiparetic gait was noted, her

physical examinations with PA-C Murphy have been unremarkable. (Doc. No. 8 at 8-9)

Likewise, Gasiewski's mental status exams have also largely yielded normal results. All

mental status examinations with PA-C Murphy demonstrated normal results. (Tr. 21, 22, 280,

503, 702) Aside from  anxious mood or affect, nearly all of Gasiewski's behavioral health visits

otherwise yielded normal mental status results. (Tr. 21, 22, 524, 517, 561, 566, 581, 588) The

most recent mental health examination that Gasiewski lists in her brief from March 2021, yielded

normal results including a euthymic mood and congruent affect. (Tr. 643) In addition, mental

status exams with three different providers in May 2021, yielded normal results, including a

psychological consultative examination. (Tr. 19, 22-23, 675-76, 685, 687) Accordingly, the ALJ's

determination that objective evidence did not support the alleged severity of Gasiewski's

symptoms is supported by substantial evidence in the record.

In addition to objective medical evidence, the ALJ found that the conservative nature and

effectiveness of Gasiewski's treatments conflicted with her allegations. With regard to mental

impairments, Gasiewski reported that she has never taken psychotropic medications and never

been hospitalized for her mental impairments. (Tr. 22, 23, 674) Regarding her physical

impairments, Gasiewski was prescribed medication and vitamins for her RRMS and tremors. (Tr.

704) PA-C Murphy reported that the treatment resulted in an improvement in Gasiewski's

symptoms and no new neurological symptoms.  (Tr. 22, 504, 686, 688, 704)

The ALJ also found Gasiewski's activities of daily living contradicted her allegations

regarding the severity of her symptoms:

> Regarding activities of daily living, the claimant testified that she has a driver's license
> and is able to drive, but only drives short distances occasionally due to dizziness and
> weakness, and she generally uses the bus for transportation. Finally, she said that on a
> typical day, she completes household chores such as cleaning dishes and cooking, but
> needs to sit down when performing them, and her siblings help take care of her children
> and with chores (hearing testimony)

(Tr. 21, see also Tr. 22) The ALJ also noted that, Gasiewski "reported mostly mild to moderate

level symptoms to providers at Restore Compassionate Behavioral Health ("RCBH")." (Tr. 23) In

the March 2021 RCBH appointment, Gasiewski reported that her activities of daily living "are not

limited by mental or physical health problems." (Doc. No. 8 at 6) The Sixth Circuit has stated that

the "ability to drive, prepare simple meals, shop, and go to eat or the movies…may be considered

in making a credibility determination regarding a claimant's asserted limitations." *Shepard v.*

*Comm'r of Soc. Sec.,* 705 F. App'x 435, 442 (6th Cir. 2017); *see also Hunter v.Comm'r of Soc.*

*Sec*, 2017 WL 8219090 at *14 (N.D. Ohio Dec. 22, 2017) (holding ALJ's credibility analysis was

supported by substantial evidence where Plaintiff's daily activities included cleaning, cooking,

watching TV, shopping for groceries, and helping with boyfriend with babysitting and where

treatment of mental health impairments had been "routine and conservative."*); Berry v. Comm'r*

*of Soc. Sec*., 289 F. App'x 54, 56 (6th Cir. 2008) (The Court found the ALJ's decision supported

by substantial evidence including medical opinions and claimants, "ability to live independently

and perform regular household activities belie[d] her claim that she is totally disabled").

The ALJ also credited the state agency physicians' opinions that contradicted Gasiewski's

claims including Lisa Foulk, Psy.D., who found Gasiewski's mental health conditions did not pose a

significant limitation to her RFC and Dr. Torello, who opined physical limitations contradicted

Gasiewski's claims.  (Tr. 2-243, 87-96); 20 C.F.R. § 404.1513a(b)(1) ("Federal or State agency

medical or psychological consultants are highly qualified and experts in Social Security disability

evaluation."). Thus, the state agency opinions also supported discounting Gasiewski's allegations.

As explained above, the ALJ's decision provides specific reasons, supported by substantial

evidence in the record and using the factors outlined in SSR 16-3p, for not fully crediting Gasiewski's

allegations. That evidence includes objective medical testing, Gasiewski's limited and effective

treatment, her activities of daily living, and medical opinion evidence. Since the ALJ's credibility

determination is sufficiently articulated and supported by substantial evidence, his credibility

determination will be given great weight. *Workman v. Comm'r of Soc. Sec.*, 105 Fed.Appx. 794, 801

(6th Cir. 2004) ("An ALJ's credibility assessment must be accorded great weight and deference.");

*Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 476 (6th Cir.2003) (explain that in reviewing an ALJ's

credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for

partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." The Court must defer to an ALJ's findings if they are supported by substantial evidence, even if substantial evidence also supports the opposite conclusion. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604-05 (6th Cir. 2009); *see also O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (*quoting Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)) ("the Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ."). As the Sixth Circuit has explained, "an administrative law judge's credibility findings are virtually unchallengeable absent compelling reasons. *Shepard*, 705 Fed. Appx. at 442. Gasiewski presents no such compelling reasons here.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED**.

Date:  August 14, 2023                                     *s/ Jonathan Greenberg*
                                                          Jonathan D. Greenberg
                                                          United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**